18-3506
United States v. Kevin Walker

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of May, two thousand twenty-three.

PRESENT:
> JON O. NEWMAN,
> REENA RAGGI
> MYRNA PÉREZ,
> > *Circuit Judges.*

_____

United States of America,

> > *Appellee,*

> > v.                                                                          No. 18-3506

Kevin Walker,

> > *Defendant-Appellant.*[*]

_____

| | |
|---|---|
| **FOR DEFENDANT-APPELLANT:** | SEAN MICHAEL MAHER, The Law Offices of Sean M. Maher, PLLC, Bronx, NY. |
| **FOR APPELLEE:** | JONATHAN E. REBOLD (David Abramowicz, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY. |

---

[*] The Clerk of Court is respectfully directed to amend the case caption as set forth above.

Appeal from a judgment of the United States District Court for the Southern District of New York (Ronnie Abrams, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Kevin Walker appeals from a judgment of conviction entered on November 6, 2018, after a jury found him guilty of conspiracy to commit Hobbs Act robbery and three substantive Hobbs Act robberies, *see* 18 U.S.C. § 1951, and possessing or aiding and abetting the possession of a firearm brandished in furtherance of two of the Hobbs Act offenses, *see id.* §§ 924(c)(1)(A)(ii) & 2. Sentenced to a total prison term of 240 months, Walker raises three evidentiary challenges to his conviction: (1) the admission of certain expert witness testimony in violation of Federal Rules of Evidence 702 and 703 and the Sixth Amendment's Confrontation Clause; (2) the admission of evidence obtained under overbroad warrants; and (3) the admission of evidence derived from a warrantless search of Walker's apartment. For the reasons that follow, we affirm. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we discuss only as necessary to explain our decision.[1]

**DISCUSSION**

### I.        The Testimony of Expert Witness Reginald Donaldson

Reginald Donaldson, an investigative analyst for the United States Attorney's Office for the Southern District of New York, testified in an expert capacity that, *inter alia*, cell-site data for two of Walker's cell phones placed him in the vicinity of two charged robberies and multiple attempted robberies. Donaldson's testimony was based on an analysis of both cell-site records

---

[1] Given that Walker raises his evidentiary challenges in connection with a conviction following a jury trial, in reviewing his claims, we consider the evidence "in the light most favorable to the prosecution." *United States v. Felder*, 993 F.3d 57, 61 (2d Cir. 2021).

provided by Sprint Nextel and Verizon Wireless—which serviced the two cell phones in question—and cell-tower "keys" obtained from an FBI repository, which identified the geolocations of Sprint and Verizon's cell towers. Walker argues that because the cell-tower keys Donaldson relied on were not provided directly by the cell service providers and are updated only sporadically by those providers, Donaldson's analysis was inherently unreliable and, therefore, his testimony should have been excluded under Federal Rules of Evidence 702 and 703. Further, Walker alleges that late disclosure of these facts prevented him from effectively cross-examining Donaldson, in violation of the Confrontation Clause.

The admission of expert testimony is governed primarily by the Federal Rules of Evidence. Rule 702 discusses admissibility and requires that the testimony is "based on sufficient facts or data" and "the product of reliable principles and methods." Fed. R. Evid. 702. Rule 703 provides guidance on the facts or data experts may rely on in formulating their opinions. An expert may rely on inadmissible facts or data in reaching his opinion but "may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. Accordingly, when a party seeks to introduce expert testimony, the trial judge is tasked with ensuring that the "testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

A trial judge has "considerable leeway" in making this determination, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999), and thus, "both the trial court's decision to admit expert testimony and the method by which the court reaches that decision are reviewable only for abuse of discretion," *United States v. Jones*, 965 F.3d 149, 161 (2d Cir. 2020). In this context, a court abuses its discretion only "when the decision to admit or exclude expert scientific testimony was

3

'manifestly erroneous.'" *Id.* at 162. The trial court's decision to admit may be manifestly erroneous when the "expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached," "is speculative or conjectural," or is "based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison." *Id*. (internal quotation marks omitted).

That is not this case. While the court expressed concern that the records obtained from the FBI repository were not properly certified by the service providers and noted the risk of prejudice, it assuaged that concern and fashioned an appropriate remedy for confirming that the cell-site keys Donaldson used as part of his analysis were sufficiently reliable. Specifically, the district court conducted its own *voir dire* and ordered the government: to confirm which keys were used by Donaldson and that those keys were not modified; to obtain certifications for keys utilized by the service providers; to compare the certified keys against the keys used by Donaldson to determine whether they were identical; and to direct Donaldson to conduct the same analysis to determine whether he arrived at the same conclusions. After the government complied and Donaldson confirmed that his conclusions remained unchanged, the court admitted the testimony and the certified keys into evidence. Given the district court's thoughtful and careful approach to evaluating the basis for Donaldson's testimony, we identify no manifest error.[2]

---

[2] Walker's remaining arguments can be easily dismissed. His complaint that Donaldson did not engage in a row-by-row comparison of the keys is immaterial to the question of whether the testimony was properly admitted because there is no dispute that the geolocations of the specific cell towers relevant to Donaldson's analysis were identical across all of the various cell-tower keys. Furthermore, Walker provides neither precedent nor evidence substantiating his challenge to the accuracy of the cell-site keys Donaldson obtained from the FBI database. To the contrary, his suggestions that the records relied on by Donaldson were possibly modified or otherwise altered at some point on their journey from the service providers to the FBI database to Donaldson are contradicted by the certified keys provided by Sprint and Verizon, the accuracy of which Walker has not challenged. In any event, those accusations go to the weight of the evidence, not their admissibility, and were properly left for the jury to evaluate. *See United States v. Morrison*, 153 F.3d 34, 57 (2d Cir. 1998) (holding that a break in the chain of custody, if it did occur, "do[es] not bear upon the admissibility of evidence, only the weight of the evidence").

Second, the record does not support Walker's Confrontation Clause claim. That clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). Therefore, "the Confrontation Clause gives a defendant the right not only to cross-examination, but to effective cross-examination." *United States v. James*, 712 F.3d 79, 103 (2d Cir. 2013).

We conclude that Walker was given "a full and fair opportunity to probe and expose" the alleged weaknesses in Donaldson's cell-site testimony through cross-examination. *Delaware v. Fensterer*, 474 U.S. 15, 22 (1985). Despite Walker's failure to object promptly when Donaldson was disclosed as a witness and the cell-site data at issue provided, the court granted Walker several adjournments to prepare for cross-examination. *See, e.g.*, App'x 165, 312. In addition, the court ordered the government to make multiple witnesses from the FBI and service providers available to the defense. Walker ultimately called five of these witnesses and engaged in extensive cross-examination of Donaldson to highlight the alleged flaws in Donaldson's analysis, thereby providing the jury with ample "information enabling them to make a discerning appraisal of [the witness's] credibility." *United States v. Roldan-Zapata*, 916 F.2d 795, 806 (2d Cir. 1990). The district court's refusal to grant a mistrial or to hold the trial in abeyance therefore did not "so undermine [Walker's] right to confront adverse witnesses as to create reversible error." *Id.*; *see Fensterer*, 474 U.S. at 20 ("[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.").

For these reasons, we identify no error in the district court's admission of Donaldson's expert testimony.

## II.     The Validity of the Devices and Cell-Site Warrants

Walker argues that the warrants authorizing the search of his three cell phones (the "Devices Warrant") and the seizure of historical location information and toll records for two of those cell phones (the "Cell-Site Warrants") were not sufficiently particular and not supported by probable cause. We are not persuaded because (1) the challenged warrants were sufficiently particular to provide adequate guidance to the executing officers as to the kind of evidence sought; (2) in any event, the executing officers' reliance on the warrants was objectively reasonable, satisfying the "good faith" exception to the exclusionary rule; and (3) any error in admitting the evidence was harmless.

The Fourth Amendment's particularity requirement requires that a warrant: (1) "identify the specific offense for which the police have established probable cause"; (2) "describe the place to be searched"; and (3) "specify the items to be seized by their relation to designated crimes." *United States v. Purcell*, 967 F.3d 159, 178 (2d Cir. 2020) (internal quotation marks omitted) (quoting *United States v. Galpin*, 720 F.3d 436, 445–46 (2d Cir. 2013)). "We have . . . found the particularity requirement to be violated where a warrant fails to place some 'limitation . . . on the kind of evidence sought' and instead 'le[aves] it entirely to the discretion of the officials conducting the search to decide what items [a]re to be seized.'" *Id.* (quoting *United States v. Buck*, 813 F.2d 588, 592 (2d Cir. 1987)). At the same time, we have stated that "[t]he Fourth Amendment does not require a perfect description of the data to be searched and seized," and "a search warrant does not necessarily lack particularity simply because it is broad." *United States v. Ulbricht*, 858

F.3d 71, 100 (2d Cir. 2017), *abrogated on other grounds by Carpenter v. United States*, 138 S. Ct. 2206 (2017).

The challenged warrants satisfy all three particularity criteria. Namely, the Devices Warrant (1) identifies the specific offenses of Hobbs Act robbery, Hobbs Act robbery conspiracy, and use of firearms in connection with a crime of violence; (2) describes the devices to be searched by, *inter alia*, their unique device identification and assigned call numbers; and (3) lists categories of "items" to be seized and their connection to the subject offenses, for example, "communications concerning robberies and firearms" and "[r]ecords, notes, or ledgers relating to robberies and funds obtained through robberies." App'x 61.5. The Cell-Site Warrants similarly (1) identify specific Hobbs Act and firearms crimes; (2) describe the devices from which data are to be seized by reference to their call numbers and service providers; and (3) specify that the historical cell-site location information sought is for the time period in which the crimes in question took place. Moreover, the affidavits supporting all three warrants provide ample probable cause to support the authorized searches, including, *inter alia*, cooperating co-conspirators' statements directly implicating Walker in completed robberies, corroborating surveillance footage and electronically stored information, text messages among the three conspirators planning the subject robberies, and seizure of the devices in question from Walker upon his arrest.

Walker's arguments to the contrary are not persuasive. As to the Cell-Site Warrants, Walker takes issue with the broad language ordering location and subscriber information for "*any* phone, text, or data sessions/communications to or from the Target Cellphone." App'x 61.37. 61.53 (emphasis added). In so doing, Walker ignores the fact that the warrants were date and time-limited to the two-month period surrounding the robberies. The Devices Warrant described ten specific categories of evidence which provided guidelines limiting "the kind of evidence sought"

7

and therefore did not delegate decisions regarding the scope of the seizure "entirely to the discretion of the officials conducting the search." *Purcell*, 967 F.3d at 180 (internal quotation marks omitted).

Second, even if the warrants had lacked particularity or been overbroad, that fact, standing alone, would not compel suppression. The benefits to suppressing evidence "obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *United States v. Leon*, 468 U.S. 897, 922 (1984). In such cases, the "good faith exception" applies and the improperly obtained evidence will not be suppressed. *Id*. Here, for the reasons explained above, reliance on the warrants was objectively reasonable because they were not so "facially deficient" that the executing officers could not "reasonably presume [them] to be valid." *Id.* at 923.[3]

Third, even if admitting the evidence obtained under the warrants was error, such error was harmless. *See Purcell*, 967 F.3d at 180 ("[T]he erroneous admission of the evidence seized pursuant to unconstitutional warrants must be reviewed under a harmless error standard."). Even without the location and usage data from Walker's cell phones, the prosecution presented strong evidence that Walker committed the crimes with which he was charged including, *inter alia*, cell phone data and testimony from his co-conspirators about his role, camera footage and license plate reader evidence placing Walker's car at the scene of the robberies, and materials seized from Walker tying him to the robberies. Because we conclude "beyond a reasonable doubt that a rational jury would have rendered a verdict of guilty absent the alleged error," the alleged error is harmless. *United States v. Dhinsa*, 243 F.3d 635, 649 (2d Cir. 2001).

---

[3] That our precedent at the time the warrants were obtained did not require law enforcement to obtain a warrant to collect cell-site location information also suggests that the officers' reliance on them was reasonable. *See United States v. Zodhiates*, 901 F.3d 137, 143–44 (2d Cir. 2018) (discussing requirements for obtaining cell phone records before the Supreme Court's decision in *Carpenter v. United States*, 138 S.Ct. 2206 (2018)).

### III. The Evidence Obtained During a Warrantless Search of Walker's Home

We also affirm the denial of Walker's motion to suppress evidence seized during a warrantless search of the home Walker shared with his mother. The district court did not clearly err in concluding the government had proven by a preponderance of the evidence that, based on the totality of the circumstances, a reasonable officer would have believed Walker and his mother consented to the search.

There are a few "'specifically established and well-delineated exceptions'" to the Fourth Amendment's prohibition against warrantless searches, such as when a search is authorized by voluntary consent. S*chneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). When "the government relies on consent to justify a warrantless search, it bears the burden of proving by a preponderance of the evidence that the consent was voluntary." *United States v. Snype*, 441 F.3d 119, 131 (2d Cir. 2006). We must consider the totality of the circumstances in determining whether the consent was voluntary or coerced, *see id*., but "the ultimate question presented is whether the officer had a reasonable basis for believing that there had been consent to the search," *United States v. Garcia*, 56 F.3d 418, 423 (2d Cir. 1995) (internal quotation marks omitted).

Walker does not deny that he and his mother gave law enforcement their consent. Rather, the validity of the search depends on whether their consent was given voluntarily. We review a district court's factual findings for clear error, affording "special deference" to findings based on determinations of witness credibility. *Anderson v. Bessemer City*, 470 U.S. 564, 574–75 (1985) (explaining that "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said"). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire

9

evidence is left with the definite and firm conviction that a mistake has been committed." *Id*. at 573 (citation omitted). We are not asked to determine whether we "would have viewed the evidence differently," but instead whether "the district court's account of the evidence is plausible in light of the record viewed in its entirety." *Id.* at 573–74. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id*. at 574.

The parties' versions of events were at times irreconcilable and required the district court to carefully weigh the testimony presented in determining, under the totality of the circumstances, whether a reasonable officer would have believed that the consent was voluntary. The officers present testified that they requested and received consent from Walker and his mother before conducting the search; Walker insisted that his consent was predicated on a belief that it would not have mattered to the requesting armed law enforcement officers because they had either already conducted the search or claimed that they would proceed regardless of his answer. Officers testified that Ms. Walker gave her consent twice (*i.e.*, orally and in writing) before they conducted the search; Walker's mother testified that she was told by an agent that Walker had already given his permission—which was denied by multiple officers—and that she signed the consent form because she thought she was agreeing only to let the police canine enter the apartment. In reaching its decision, the district court properly considered the totality of the circumstances including Walker's experience with law enforcement and a recording of Walker admitting during a later interview that he remembered giving his consent, and ultimately credited the consistent testimony of the various government witnesses. *See id.* at 575 ("[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a

coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.").

Because the district court's findings are supported by the evidence and "plausible in light of the record viewed in its entirety," the district court did not clearly err in finding that a reasonable officer would have believed under the totality of the circumstances that Walker and his mother voluntarily gave their consent. *Id.* at 574.

\* \* \*

We have considered Walker's remaining arguments and find them to be without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court