[987 NE2d 264, 964 NYS2d 487]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STE-
PHEN DEPROSPERO, Appellant.

Argued February 12, 2013; decided March 26, 2013

## POINTS OF COUNSEL

*Frank Policelli,* Utica, for appellant. The search of Stephen DeProspero's digital camera after the criminal proceedings had terminated was a warrantless search requiring suppression under both the State and Federal Constitutions. (*United States v $490,920 in United States Currency,* 911 F Supp 720; *Matter of Documents Seized Pursuant to Search Warrant,* 124 Misc 2d 897; *Matter of DeBellis v Property Clerk of City of N.Y.,* 79 NY2d 49; *People v Scott,* 79 NY2d 474; *United States v Jeffers,* 342 US 48; *Coolidge v New Hampshire,* 403 US 443; *Stanley v Georgia,* 394 US 557; *United States v Harrell,* 530 F3d 1051; *United States v Carey,* 172 F3d 1268; *United States v LaFatch,* 565 F2d 81.)

*Scott D. McNamara, District Attorney,* Utica (*Steven G. Cox* of counsel), for respondent. I. The inspection of digital media seized pursuant to a lawful judicial order was proper. (*McClendon v Rosetti,* 460 F2d 111; *Matter of DeBellis v Property Clerk of City of N.Y.,* 79 NY2d 49; *United States v Jeffers,* 342 US 48; *United States v LaFatch,* 565 F2d 81; *Matter of Sea Lar Trading Co. v Michael,* 94 AD2d 309, 60 NY2d 860; *United States v $490,920 in United States Currency,* 911 F Supp 720; *United States v Harrell,* 530 F3d 1051; *United States v Farrell,* 606 F2d 1341; *One 1958 Plymouth Sedan v Pennsylvania,* 380 US 693.) II. The United States Constitution imposes no deadline for the forensic examination of evidence seized lawfully. (*Warden, Md. Penitentiary v Hayden,* 387 US 294; *United States v Poller,* 43 F2d 911; *Brigham City v Stuart,* 547 US 398; *United States v Knights,* 534 US 112; *Wyoming v Houghton,* 526 US 295; *People v Galak,* 80 NY2d 715; *United States v Brignoni-Ponce,* 422 US 873; *South Dakota v Opperman,* 428 US 364; *Colorado v Bertine,* 479 US 367; *Katz v United States,* 389 US 347.) III. Law enforcement, prosecutors and the courts have a common-law

obligation to prevent the return of contraband to any individual. (*United States v Jeffers*, 342 US 48; *One 1958 Plymouth Sedan v Pennsylvania*, 380 US 693; *Carroll v United States*, 267 US 132; *Sullivan v Grupposo*, 77 Misc 2d 833; *Jacobson v United States*, 503 US 540; *Simpson v St. John*, 93 NY 363; *Wise v Henkel*, 220 US 556; *Matter of Moss v Spitzer*, 19 AD3d 599; *DXB Video Tapes v Halay*, 239 AD2d 205; *SSC Corp. v State of N.Y. Organized Crime Task Force*, 128 AD2d 860.)

## OPINION OF THE COURT

Chief Judge LIPPMAN.

Defendant entered a plea to predatory sexual assault against a child after his motion to suppress evidence alleged to have been obtained by the State in consequence of an illegal search was denied. That evidence, consisting of several hundred still-frame digital images depicting defendant engaged in a sexual act with a child, was found on the memory card of a digital camera seized from defendant's residence pursuant to a warrant issued on May 4, 2009 and executed the following day. The forensic examination of the memory card and other digital media devices seized pursuant to the warrant was, for the most part, not performed until January 2010. In the interim, however, defendant was prosecuted for and, in September 2009, pleaded guilty to one count of possessing a sexual performance by a child, based on a single pornographic image of a child found on his computer during a preliminary on-site examination of that device at the time of the warrant's execution.

After defendant served the prison sentence imposed upon his September 2009 conviction, and after his time to appeal from the judgment of conviction elapsed, his attorney, in December 2009, contacted the Oneida County prosecutor who had handled the matter, and requested the return of the various items seized from defendant's residence pursuant to the May 2009 warrant. The prosecutor responded that he could not return items containing contraband images and that he would have to ascertain from the State Police laboratory, which had been in possession of the sought property since the warrant's return, whether the various digital devices seized from defendant's home were clean. On contacting the laboratory, however, the prosecutor learned that the devices had not yet been forensically

examined.[1] It was only when they were finally examined a relatively short time later that the still-frame images upon which defendant's presently challenged predatory sexual assault conviction is based were discovered.

Although defendant sought suppression of the evidence obtained in the search of his home upon the ground that the warrant authorizing the search was issued on a deficient predicate, that contention is no longer pressed, and, indeed, it is clear that, as the motion court found, the state investigator's affidavit submitted in support of the warrant application, detailing the tracing of numerous child pornography downloads to an IP address used under an Internet account bearing defendant's name and address, amply established probable cause for the requested search and seizure. Nor is there any current contention that the warrant was overbroad or that the search and seizure performed on May 5, 2009 exceeded the warrant's scope. The presently relevant claim is rather that by the time of the January 2010 forensic examination yielding the inculpatory still-frame images, the authority provided by the May 4, 2009 warrant had lapsed—that in the absence of fresh judicial authorization, the January 2010 search was illegal and the evidence obtained from it therefore inadmissible.

County Court, in denying defendant's suppression motion, and the Appellate Division, in its decision affirming the judgment convicting defendant (91 AD3d 39 [2011]), rejected this contention, and, the matter having now come before us pursuant to permission granted by a Judge of this Court (18 NY3d 957 [2012]), we reject it as well.

Although the issue is far from settled, we assume for present purposes in defendant's favor that the illegal retention of property by the state subsequent to an initial lawful seizure is redressable as a Fourth Amendment violation, that is to say as a continuing "seizure" which at some point subsequent to its inception lost its justifying predicate.[2] Even while hypothetically allowing the viability of the theory, however, it is plain that it cannot avail defendant on the present facts.

---

1. It was explained at the hearing held on defendant's suppression motion that the delay in examining his digital storage devices was occasioned by the Computer Forensic Laboratory's policy of prioritizing examinations of the many devices awaiting its inspection based on certain indicia of urgency not present in defendant's case.

2. Although the Supreme Court, arguably, has implicitly recognized that a "seizure" within the meaning of the Fourth Amendment may continue

The Fourth Amendment prohibition against unreasonable searches and seizures is now prevalently understood to protect what an individual may legitimately expect to keep private against unwarranted intrusion by agents of the state (*Katz v United States*, 389 US 347, 351 [1967]). It is, then, ordinarily elemental to the viability of a claim of a Fourth Amendment violation, that its proponent is able to allege a legitimate expectation of privacy in the places or items said to have been illegally searched or seized (*Rakas v Illinois*, 439 US 128 [1978]; *People v Ramirez-Portoreal*, 88 NY2d 99, 108 [1996]).

Here, it is plain that in the aftermath of the execution of the valid May 4, 2009 warrant, defendant was deprived of any legitimate expectation of privacy he may have had respecting the seized items, which were, pursuant to the warrant and warrant return, to be retained by the police for an unspecified period "for the purpose of further analysis and examination." Defendant does not argue to the contrary. Rather, he contends that in advance of the January 2010 laboratory examination of his property the legitimate expectation of privacy lost by reason of the warrant's execution was restored. This, he says, occurred when the prosecution culminating in his September 2009 conviction for possessing a sexual performance by a child ran its course, and the seized items were no longer useful in that or any other pending criminal proceeding. Defendant points out that when, in December 2009, his attorney requested the return of his property, there was no outstanding criminal matter to which the seized items or their contents were assertedly relevant, and evidently no new prosecution was then in the offing.

It does not, however, follow that the authority of the warrant should be understood to have waned, or defendant's legitimate expectations as to the privacy of his seized property to have commensurately waxed. Defendant's property had been seized upon probable cause to believe that he had repeatedly used it to engage in felonious conduct punishable pursuant to Penal Law article 263. Nothing had happened since the warrant was signed to diminish the cause for its issue. Certainly, defendant's

---

beyond the initial taking (*see e.g. United States v Place*, 462 US 696 [1983]), the issue has been closely debated in the federal circuits, several of which have held that the Fourth Amendment has no bearing where a claim relates to the legality of the government's retention of property following a legal seizure, because the subsequent retention is not itself a "seizure" (*see e.g. Lee v City of Chicago*, 330 F3d 456, 460-466 [7th Cir 2003]; *Fox v Van Oosterum*, 176 F3d 342, 349-352 [6th Cir 1999]).

intervening child pornography conviction did not sap the warrant of its justifying predicate; nor did the winding-up of the prosecution resulting in that conviction. It is manifest that the continued validity of a search warrant and any assumption of custody it authorizes is not necessarily tied to the pendency of any particular prosecution (*see* CPL 690.55 [2]). The duration of a warrant's authority is more appropriately measured by the persistence of the cause for its issue. Here, the predicate for the seizure and examination of defendant's digital media devices was at least as compelling in January 2010 as it had been in May 2009. This being so, there appears no reason to conclude that the warrant did not at the time of the state laboratory examination remain valid and allow both the State's continued custody of the seized property and the "lesser-related intrusion" involved in that property's inspection (*see People v Natal*, 75 NY2d 379, 384 [1990], *cert denied* 498 US 862 [1990]). It is plain that defendant had no relevant expectation of privacy to ground a Fourth Amendment-based suppression claim.

Even were we to understand, and in theory allow, defendant's suppression claim as one premised not on his expectation of privacy, but entirely upon his property rights and the State's alleged wrongful interference with them, the claim would not be viable in light of the warrant's continued validity. Indeed, given the unabated probable cause to believe that the seized items contained contraband images, any reunification of defendant with his property would have been conditioned, as it in fact was, upon the conduct of the analysis and examination contemplated by the warrant, if only to assure that the release of the property would not entail the commission of a new possessory offense and the reintroduction of child pornography into the public domain. And, although the parties do not argue the point, it seems that some or all of the property here, even if not contraband, might have been subject to forfeiture as instrumentalities of crime in a proceeding brought under CPLR 1311.

We note that neither the Fourth Amendment nor its New York State analogue (NY Const, art I, § 12) specifically limit the length of time property may be held following a lawful seizure. Nor is such a limitation evident from the text of New York's statute governing the disposition of evidence obtained by warrant (CPL 690.55). But the statutory omission is likely no more than a concession to the impossibility of usefully prescribing uniform limitations in this context; it, of course, does not signify that private property obtained under the authority of a warrant

may be effectively confiscated without a further showing of justification. Obviously, it would not be compatible with due process for the state to retain property under color of a search warrant beyond the exhaustion of any law enforcement purpose adequate to justify the withholding (*see Matter of DeBellis v Property Clerk of City of N.Y.*, 79 NY2d 49, 57 [1992]). And, while we do not exclude the hypothesis that such a withholding would be redressable as well as an unreasonable seizure, the viability of that theory is a matter we need not and do not decide, since, as noted, no claim that would fit within it is made out by the present facts.

Accordingly, the order of the Appellate Division should be affirmed.

Judges GRAFFEO, READ, SMITH, PIGOTT and RIVERA concur.

Order affirmed.