Rumsey, J.
 

 Appeal from a judgment of the Supreme Court (Breslin, J.), rendered June 3, 2015 in Albany County, upon a verdict convicting defendant of the crime of rape in the first degree.
 

 On July 30, 2014, the female victim invited defendant, whom she had known for approximately one year, to visit her apartment. After defendant arrived at approximately 9:30 p.m., they smoked crack cocaine, which defendant had brought with him, and engaged in sexual intercourse. The following morning, the victim contacted the police to report that she had been raped. Defendant was ultimately charged by indictment with rape in the first degree, criminal sexual act in the first degree and criminal sale of a controlled substance in the third degree. Upon a jury trial, defendant was convicted of rape in the first degree and acquitted of the remaining charges. He was sentenced as a second felony offender to a prison term of 15 years, with 15 years of postrelease supervision. Defendant now appeals.
 

 Defendant first argues that the verdict was against the weight of the evidence. “In an analysis of whether a verdict is against the weight of the evidence, we first determine whether a different finding would not have been unreasonable, and, if not, we then weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine whether the trier of fact accorded proper weight to the evidence. This analysis entails viewing the evidence in a neutral light and giving deference to the jury’s credibility assessments” (People v Cooley, 149 AD3d 1268, 1269 [2017] [internal quotation marks and citations omitted], lv denied 30 NY3d 979 [2017]). As relevant here, “[a] person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person . . . [b]y forcible compulsion” (Penal Law § 130.35 [1]). “ ‘Forcible compulsion’ means to compel by . . . use of physical force” (Penal Law § 130.00 [8] [a]).
 

 At trial, the victim testified that she became “high” after she and defendant smoked crack cocaine in the kitchen. She recalled that she became uncomfortable in the presence of defendant, who was drinking beer at the kitchen table, because he made “[s]exual gestures” and repeatedly stated a desire to have sexual intercourse with her. The victim testified that she told him no and asked him to leave her apartment, but admitted that when defendant asked her if he could “suck on [her] breasts,” she allowed him to do so with the hope that he would then leave. The victim stated that defendant then carried her from the kitchen into the living room and, when she asked him to put her down, he stated that “he was taking what was his.” According to the victim, defendant then placed her on a couch in the living room and restrained her while engaging in certain sexual contact, including vaginal intercourse, notwithstanding the fact that she “yell[ed]” at him to stop at least six times. She estimated that the rape lasted for 10 or 15 minutes and testified that, after using the bathroom, defendant left her residence, but returned a few minutes later to retrieve some money he had left. The victim stated that she sent a text message to defendant the following day stating, “What you did was wrong, and you know it was, I asked you to stop . . . [eight] times, dude,” and he replied, “Okay, apologize, apologize, okay, end of it.” A photograph of the victim’s cell phone screen showing the victim’s text message and defendant’s response was admitted into evidence. On cross-examination, the victim admitted that she had previously abused crack cocaine, opiates and heroin and that she was taking medication for bipolar disorder at the time of the incident, which she had been advised could impair her thinking, especially if combined with illicit drugs like crack cocaine. The police officer who interviewed the victim on the day after the incident testified that she was visibly upset, crying and agitated. The nurse who performed a sexual assault examination on the victim on the day after the incident testified that the victim was “[t]earful at times,” and that the victim had an abrasion on her right knee, but no other injuries.
 

 Defendant also testified at trial. He stated that when the victim invited him to her apartment, she requested that he bring crack cocaine. He admitted that he had sexual intercourse with the victim at her apartment on the day in question, but stated that it was consensual and had been initiated by the victim; he specifically testified that she never told him to stop and that he did not hold her down. According to defendant, the victim then asked if he could obtain more crack cocaine; after he responded that he could not, she became belligerent and he left her apartment. When he returned to her apartment to retrieve his money—which he needed for bus fare—the victim allowed him to enter and retrieve the money and again asked if he could obtain more crack cocaine. Defendant admitted receiving the victim’s text message, and testified that he understood it as a complaint that he could not obtain more crack cocaine, for which he apologized. Defendant testified that he lied when he was interviewed subsequent to his arrest on August 1, 2014—by denying being in the county where the rape occurred or knowing the victim—because he was scared. The conflicting testimony of the victim and defendant presented “a classic he-said she-said credibility determination” for the jury to resolve (People v McCray, 102 AD3d 1000, 1000 [2013], affd 23 NY3d 193 [2014]), and, although a different verdict would not have been unreasonable, we accord deference to the jury’s determination that the victim’s testimony was more credible than that of defendant and conclude that the weight of the evidence supports the verdict.
 

 Defendant next contends that Supreme Court erred when it denied his motion seeking a subpoena duces tecum compelling production of the victim’s mental health treatment records for in camera review, which he sought as a possible basis for challenging the victim’s credibility. “In general, mental health records are confidential and will not be discoverable where sought as a fishing expedition searching for some means of attacking the victim’s credibility. Access will be provided, however, where a defendant can demonstrate a good faith basis for believing that the records contain data relevant and material to the determination of guilt or innocence, a decision which will rest largely on the exercise of a sound discretion by the trial court” (id. at 1005 [internal quotation marks and citations omitted]). In that regard, a history of treatment for a diagnosed mental condition is a sufficient basis warranting in camera review of a witness’s mental health records to determine whether they contain relevant and material information bearing on the credibility of the witness that ought to be disclosed to the defendant (see People v Bowman, 139 AD3d 1251, 1253-1254 [2016], lv denied 28 NY3d 927 [2016]; People v McCray, 102 AD3d at 1005). The proper procedure in such cases is for the trial court to order production of the requested records and conduct an in camera review (see People v Bowman, 139 AD3d at 1254; People v Viera, 133 AD3d 622, 623 [2015], lv denied 26 NY3d 1151 [2016]; People v McCray, 102 AD3d at 1005). Without conducting an in camera review, a trial court lacks knowledge of whether the witness’s mental health records contain any information relevant and material to the determination of guilt or innocence.
 

 The requested records were not reviewed by Supreme Court. Prior to trial, the People disclosed that the victim had indicated that she had received treatment for bipolar disorder and depression and, further, produced a copy of the medical record from the sexual assault examination that was conducted on the day after the incident in which the victim had also reported a past medical history of “bipolar” and that she was taking prescription medications for that condition. Defendant requested that the court issue a subpoena duces tecum to obtain the victim’s mental health records and conduct an in camera review to ascertain whether they contained any information relevant and material to the victim’s credibility. Supreme Court noted that the People had represented that the victim had a “life long psychiatric condition” and that she was taking prescription medication for her conditions at the time of the alleged rape. The court concluded that the victim’s prior mental health history “has been consistent. Bipolar and depression . . . [with] no indication that that would reflect upon memory or hallucinations or anything else”; on that basis, the court denied defendant’s request for in camera review of the victim’s mental health records. Although defendant’s motion was denied, his counsel used the available information to cross-examine the victim about her mental condition, and she admitted that she was taking—at the time of the incident and at trial—two medications that had been prescribed for “bipolar depression” that could have impaired her thinking, especially when combined with crack cocaine.
 

 We conclude that Supreme Court erred when it declined to order production of the victim’s mental health records and to review them in camera. Inasmuch as those records were never produced and were not part of the record, we are unable to remit the matter for a reconstruction hearing (compare People v Bowman, 137 AD3d 1484, 1484-1485 [2016]; People v Fullen, 118 AD3d 1297, 1298 [2014]). Moreover, without knowing the content of those records, we are unable to determine whether the information that they contain is merely cumulative to the information provided to defendant about the victim’s mental health history that was used as a basis for cross-examination, or whether the records contain additional relevant and material information bearing on her credibility. Similarly, our lack of knowledge of the contents of the victim’s mental health records precludes us from determining whether the court’s error in this regard was harmless. Accordingly, the judgment of conviction must be reversed and the matter remitted for a new trial.
 

 In light of the need for a new trial, we address defendant’s argument that Supreme Court erred in denying his motion to suppress evidence retrieved from his cellular phone because the warrant authorizing a search of his phone was not executed within 10 days of its issuance, as required by CPL 690.30 (1). When defendant was arrested on the underlying charges on August 1, 2014, the arresting police officers retrieved a cellular phone during a search of his person conducted at the police station. The phone remained in possession of the police department when a search warrant was issued on November 20, 2014 authorizing a search of the phone for, among other things, subscriber information and text messages. At a pretrial hearing, the People disclosed that the examination of defendant’s phone pursuant to the warrant was completed 19 days after the warrant was issued. We conclude that the court erred in denying defendant’s motion to suppress evidence obtained upon a search of his phone because the warrant was not executed within the 10-day limit for execution of a search warrant that is plainly imposed by statute (see CPL 690.30 [1]; People v Jacobowitz, 89 AD2d 625, 625 [1982]).
 
 *
 

 Garry, J.P., Egan Jr., Rose and Mulvey, JJ., concur.
 

 Ordered that the judgment is reversed, on the law, and matter remitted to the Supreme Court for a new trial.
 

 *
 

 Supreme Court’s reliance on People v DeProspero (20 NY3d 527 [2013]) was misplaced inasmuch as CPL 690.30 (1) was not at issue in that case because the search warrant was executed one day after it was issued. Rather, the Court of Appeals held that a search of the defendant’s digital camera that was conducted eight months after it was seized pursuant to a valid and timely-executed warrant did not violate the defendant’s Fourth Amendment rights.