People v Melamed (2019 NY Slip Op 09295)





People v Melamed


2019 NY Slip Op 09295


Decided on December 24, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 24, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

RUTH C. BALKIN, J.P.
SYLVIA O. HINDS-RADIX
JOSEPH J. MALTESE
VALERIE BRATHWAITE NELSON, JJ.


2018-05785
2018-05786
 (Ind. No. 8776/16)

[*1]The People of the State of New York, respondent,
v
Daniel Melamed, appellant.


Kevin J. Keating, Garden City, NY, for appellant.
Letitia James, Attorney General, New York, NY (Alyison Gill and Lisa E. Fleischmann of counsel), for respondent.



DECISION & ORDER
Appeals by the defendant from (1) a judgment of the Supreme Court, Kings County (Danny K. Chun, J.), rendered February 14, 2018, convicting him of residential mortgage fraud in the second degree, grand larceny in the second degree (two counts), attempted grand larceny in the second degree (two counts), forgery in the second degree (four counts), and criminal possession of a forged instrument in the second degree (four counts), upon his plea of guilty, and imposing sentence, and (2) so much of an order of the same court entered May 12, 2017, as denied that branch of the defendant's omnibus motion which was to controvert a search warrant and to suppress physical evidence seized in the execution thereof. The appeal from the judgment brings up for review the denial of that branch of the defendant's omnibus motion which was to controvert a search warrant and to suppress physical evidence seized in the execution thereof.
ORDERED that the appeal from the order entered May 12, 2017, is dismissed, as the order is not appealable as of right or by permission (see CPL 450.10, 450.15); and it is further,
ORDERED that the judgment is reversed, on the law, the defendant's plea of guilty is vacated, that branch of the defendant's omnibus motion which was to controvert a search warrant and to suppress evidence seized in the execution thereof is granted, and the matter is remitted to the Supreme Court, Kings County, for further proceedings on the indictment.
On June 9, 2015, an investigator from the New York State Office of the Attorney General (hereinafter the OAG) applied for a warrant to search premises from which the defendant operated two businesses, 1578 Union Street Realty Corporation and Dream Home Realty. In the affidavit submitted in support of the warrant application, the investigator averred that there was probable cause to believe that the defendant, using 1578 Union Street Realty Corporation and Dream Home Realty, had committed the crimes of offering a false instrument for filing, endangering the welfare of a child, and violating Real Property Law § 443, which requires disclosure of certain real estate agency relationships. The affidavit alleged that the defendant caused illegal construction and demolition to be performed at a rent-stabilized building owned by 1578 Union Street Realty Corporation, which created unliveable conditions, thus endangering child tenants of the building. It further alleged that the defendant filed an application for a permit for the construction which [*2]falsely asserted that the building would not remain occupied during the construction, and that, in connection with unrelated real estate transactions, he failed to disclose to buyers that he controlled an entity which acted as the agent for the sellers.
The search warrant obtained on the basis of this affidavit permitted the OAG to search and seize broad categories of items relating to 1578 Union Street Realty Corporation, Dream Home Realty, and a number of other businesses allegedly controlled by the defendant through which he had conducted real estate transactions. The items permitted to be searched and seized included: corporate documents; employment records, employee lists, and employment contracts; all calendar books, appointment books, and address books; all computers, computer hard drives, and computer files stored on other media; and all bank, tax and financial records. The warrant did not name or specify any particular crime or offense to which the search was related, and did not incorporate the affidavit by reference.
Pursuant to the warrant, the OAG seized nine computers and several dozen boxes of papers and files. Approximately 17 months after the search warrant was executed, the defendant was charged in the instant indictment with residential mortgage fraud in the second degree, grand larceny in the second degree (two counts), attempted grand larceny in the second degree (two counts), forgery in the second degree (four counts), and criminal possession of a forged instrument in the second degree (four counts).
The defendant thereafter moved, inter alia, to controvert the search warrant and to suppress the evidence seized in the execution thereof, asserting, among other things, that the warrant violated the Fourth Amendment of the United States Constitution because it lacked particularity and was overly broad. The motion was denied, and the defendant pleaded guilty to the charges in the indictment. On appeal, the defendant challenges the denial of suppression.
The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, . . . and particularly describing the place to be searched, and the . . . things to be seized" (US Const Amend IV). The particularity requirement "prohibit[s] law enforcement agents from undertaking a general exploratory search of a person's belongings" (People v Brown, 96 NY2d 80, 84). "Indeed, indiscriminate searches pursuant to general warrants were the immediate evils that motivated the framing and adoption of the Fourth Amendment'" (id. at 84, quoting Payton v New York, 445 US 573, 583). " [A] search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional'" (Groh v Ramirez, 540 US 551, 559, quoting Massachusetts v Sheppard, 468 US 981, 988 n 5).
Here, the warrant failed to conform to that requirement. Most notably, other than a date restriction covering a period of approximately five years, the warrant permitted the OAG to search and seize all computers, hard drives, and computer files stored on other devices, without any guidelines, parameters, or constraints on the type of items to be viewed and seized (see United States v Rosa, 626 F3d 56, 62 [2d Cir] [concluding that the subject warrant "violated the Fourth Amendment's proscription against general searches" where it "directed officers to seize and search certain electronic devices, but provided them with no guidance as to the type of evidence sought"]; United States v Riccardi, 405 F3d 852, 862-863 [10th Cir] [determining that a warrant to search computer files was unconstitutional where it was not limited to any particular files or any particular crimes]; see generally United States v Burgess, 576 F3d 1078, 1091 [10th Cir] ["If the warrant is read to allow a search of all computer records without description or limitation it would not meet the Fourth Amendment's particularity requirement"]). As has been observed by federal courts, where the property to be searched is computer files, "the particularity requirement assumes even greater importance" (United States v Galpin, 720 F3d 436, 446 [2d Cir]) since "[t]he potential for privacy violations occasioned by an unbridled exploratory search" of such files is "enormous" (id. at 447).
Additionally, as to paper documents, the warrant merely identified generic classes of items, effectively permitting the OAG to search and seize virtually all conceivable documents that would be created in the course of operating a business (see United States v Bianco, 998 F2d 1112, 1115-1116 [2d Cir]; United States v George, 975 F2d 72, 76 [2d Cir]; United States v Maxwell, 920 [*3]F2d 1028, 1033 [2d Cir]; United States v Leary, 846 F2d 592, 600-601 [10th Cir]). Moreover, it did so for the two businesses identified as being involved in the suspected offenses, as well as a number of other businesses allegedly operated by the defendant. Significantly, this essentially "all documents" search was not restricted by reference to any particular crime to which the items searched and seized should relate (see United States v George, 975 F2d at 76). Indeed, the crimes charged in the present indictment were not the crimes identified in the affidavit supporting the warrant.
Thus, the warrant at issue was precisely the kind of general warrant that the Federal Constitution prohibits (see United States v Galpin, 720 F3d at 447; United States v Rosa, 626 F3d at 62-64; see generally United States v Burgess, 576 F3d at 1091). We recognize that, as our dissenting colleague points out, "courts may tolerate some ambiguity in the warrant so long as law enforcement agents have done the best that could reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have insured that all those facts were included in the warrant'" (United States v Galpin, 720 F3d at 446, quoting United States v Young, 745 F2d 733, 759 [2d Cir]). Here, however, the OAG did not include descriptive facts in the warrant or even a recitation of the suspected crimes. Thus, the OAG failed "to describe the items to be seized with as much particularity as the circumstances reasonably allow[ed]" (United States v Galpin, 720 F3d at 446 [internal quotation marks omitted]; see United States v Leary, 846 F2d at 604-605). While our dissenting colleague focuses on the defendant's contention that the warrant failed to specify the crimes charged, it is not this failure alone, but that failure combined with the failure to include any other details or guidelines in the warrant that could serve to limit its reach to evidence related to the crimes for which the OAG had probable cause to believe were committed, that renders this particular warrant unconstitutional.
The OAG contends that the affidavit in support of the warrant rendered the warrant sufficiently particularized. However, the United States Supreme Court has held that "[t]he Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents" (Groh v Ramirez, 540 US at 557). That Court explained that the "high function" served by the presence of a search warrant is not served "when some other document, somewhere, says something about the objects of the search, but the contents of that document are neither known to the person whose [premises] is being searched nor available for her [or his] inspection" (id.). Since the affidavit in support of the warrant was not incorporated by reference into the warrant, the affidavit "does not save the warrant from its facial invalidity" (id. [emphasis omitted]).
Furthermore, while the OAG asserts that the warrant was sufficiently particular because it met the requirements set forth under CPL 690.45, this reasoning fails to address the defendant's challenge to the warrant under the United States Constitution. Regardless of whether the warrant complied with the state statute, it does not meet federal constitutional standards. Thus, the search was unconstitutional and the seized items should have been suppressed. We therefore reverse the judgment, vacate the defendant's plea of guilty, and remit the matter to the Supreme Court, Kings County, for further proceedings on the indictment.
BALKIN, J.P., HINDS-RADIX and BRATHWAITE NELSON, JJ., concur.
MALTESE, J., dissents in part and concurs in part, and votes to dismiss the appeal from the order entered May 12, 2017, and to affirm the judgment, with the following memorandum:
I agree with the Supreme Court's determination that the search warrant was valid, and therefore I vote to affirm the judgment. In this case, the search warrant was based on evidence that the defendant engaged in sophisticated fraudulent real property transactions using business entities that he owned or controlled. In the affidavit in support of the search warrant prepared by the New York State Office of the Attorney General (hereinafter OAG), it was alleged that the defendant used one of these business entities to purchase an occupied residential building. He then performed renovations to render the property uninhabitable and to induce rent-stabilized tenants to abandon their apartments. During these renovations, the defendant allegedly turned off the tenants' heat during the winter and exposed them to lead dust and fire hazards. The defendant allegedly used the [*4]corporate form to conceal the illegal nature of these activities. He also allegedly perpetrated other frauds using his business entities, including self-dealing and inducing recent immigrants to buy real property by promising free renovations that he did not intend to perform. The OAG believed that the defendant and his codefendant used computers and computer-generated documents to commit these crimes. Thus, a review of the affidavit reveals the complex, sophisticated nature of the activity being investigated. Therefore, notwithstanding the fact that the affidavit in support of the warrant was not incorporated by reference into the warrant (see Groh v Ramirez, 540 US 551, 557-558), the warrant itself was sufficiently particular and was not overbroad in light of the circumstances and the nature of this activity.
Under both New York Constitution article 1, § 12, and the Fourth Amendment to the United States Constitution, no warrants "shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized" (see People v Brown, 96 NY2d 80, 84). "To meet the particularity requirement, the warrant's directive must be specific enough to leave no discretion to the executing officer'" (id. at 84, quoting People v Darling, 95 NY2d 530, 537; see Andresen v Maryland, 427 US 463, 480). However, "[t]his does not mean that hypertechnical accuracy and completeness of description must be attained but rather, from the standpoint of common sense, that the descriptions in the warrant and its supporting affidavits be sufficiently definite to enable the searcher to identify the persons, places or things that the Magistrate has previously determined should be searched or seized" (People v Nieves, 36 NY2d 396, 401 [citations omitted]). "The degree of precision concerning records requested in a warrant necessarily must vary with the type of items, the nature of the operation, and the circumstances of the case" (People v Hulsen, 178 AD2d 189, 189).
Here, the search warrant's description of the types of records to be seized in connection with certain specified business entities was " as specific as the circumstances and nature of activity under investigation permit[ted]'" (id. at 190, quoting United States v Wuagneux, 683 F2d 1343, 1349 [11th Cir]).
The defendant contends that the warrant was not sufficiently particular because it did not specify the crimes for which the People had probable cause to conduct the search. The defendant relies upon a decision of the United States Court of Appeals for the Second Circuit, United States v Galpin (720 F3d 436, 445 [2d Cir]), and a decision of the United States District Court for the Southern District of New York, United States v Wey (256 F Supp 3d 355, 380-384 [SD NY]). However, although this Court is bound by the United States Supreme Court's interpretations of the federal constitution, it is not bound by the decisions of federal intermediate appellate courts and lower federal courts (see People v Kin Kan, 78 NY2d 54, 59; People v Battease, 74 AD3d 1571, 1576-1577; Matter of Seltzer v New York State Democratic Comm., 293 AD2d 172, 174). Moreover, there is not even a clear consensus among the federal intermediate appellate courts as to whether a warrant must specify the offense for which police have probable cause to conduct the search (compare United States v Galpin, 720 F3d at 445, with United States v Chaney, 921 F3d 572, 585-586 [6th Cir], United States v Rousseau, 628 Fed Appx 1022, 1025-1026 [11th Cir], United States v Sigillito, 759 F3d 913, 922-925 [8th Cir], and United States v Riccardi, 405 F3d 852, 862 [10th Cir]). In any event, contrary to the defendant's contention, in the absence of a controlling decision by the United States Supreme Court or the New York Court of Appeals, this Court should not apply a bright-line rule requiring a search warrant to specify the particular crime or crimes for which the People had probable cause to conduct the search.
Furthermore, contrary to the determination of my colleagues in the majority, I find that the warrant was sufficiently particular even though it did not contain such a specific description of the crimes for which there was probable cause to conduct the search. Under New York law, a search warrant need not list definitively the specific section of the Penal Law or any other law allegedly violated to justify and support the underlying affidavit submitted to a judge in order to obtain a search warrant. Under CPL 690.45, which specifies what a search warrant must contain, there is no requirement to list the crimes for which the search warrant was issued. As my colleagues in the majority note, the defendant challenges the warrant under the United States Constitution regardless of compliance with this state's constitution and statute. However, as discussed, this Court [*5]is not bound by the federal intermediate appellate courts and lower federal courts' interpretations of the United States Constitution. The majority's determination that the search warrant was not sufficiently particular will result in new standards for the way that search warrants are prepared and executed in New York. Making such a substantial change in legal policy is the province of the legislature of this state or the New York Court of Appeals.
Moreover, the defendant's contention that the search warrant was overbroad is also without merit (see People v Crupi, 172 AD3d 898; People v Vanness, 106 AD3d 1265, 1267; People v DeProspero, 91 AD3d 39, 45, affd 20 NY3d 527; People v Archeval, 255 AD2d 518, 518; People v Hulsen, 178 AD2d at 190). The fact that the search warrant authorized the seizure of computers and other electronic devices that would likely contain files unrelated to the crimes for which there was probable cause to conduct the search did not render the warrant overbroad. In light of the nature of the alleged activities and crimes delineated in the sworn application for the search warrant and the fact that numerous entities were being operated from the same location, the warrant was not broader than can be justified by the probable cause upon which the warrant was based. Moreover, the fact that the search warrant authorized the seizure of records related to entities controlled by the defendant that were not directly involved in the alleged crimes did not render the warrant unconstitutional, given the complex nature of the alleged crimes and the allegations that the defendant relied upon the anonymous nature of the corporate form to conceal his activities.
I also disagree with the defendant's assertion that the People improperly retained materials seized in the execution of the search warrant. Once a person or his or her "effects have been reduced to custodial control in the law enforcement system," his or her "privacy has been intruded upon" (People v Perel, 34 NY2d 462, 465). The subsequent search of such lawfully seized property "is then but a lesser-related intrusion incident to the [seizure] already effected" (People v Greenwald, 90 AD2d 668, 668). Neither the Fourth Amendment to the United States Constitution, nor this state's analogue (see NY Const, art I, § 12), nor the Criminal Procedure Law (see CPL 690.55) limits the length of time that property may be retained and searched following a lawful seizure (see People v DeProspero, 20 NY3d at 532-533). The Court of Appeals has recognized that "the continued validity of a search warrant and any assumption of custody it authorizes is not necessarily tied to the pendency of any particular prosecution" (id. at 532; see LM Bus. Assoc., Inc. v State of New York, 124 AD3d 1215, 1216-1218). As such, "[t]he duration of a warrant's authority is more appropriately measured by the persistence of the cause for its issue" (People v DeProspero, 20 NY3d at 532).
Here, the People demonstrated probable cause to support the search warrant based on crimes with which the defendant was charged in a prior criminal action. That criminal action was still pending when the People used the challenged materials to commence the present criminal action. In addition, and contrary to the defendant's assertion otherwise, the challenged materials were responsive to the search warrant. Consequently, the defendant was not entitled to suppression based on the length of time that the People retained the materials seized pursuant to the search warrant (see id. at 531-532).
Accordingly, I vote to affirm the judgment.
ENTER:
Aprilanne Agostino
Clerk of the Court