| People v Brois |
|:---:|
| 2023 NY Slip Op 34739(U) |
| September 13, 2023 |
| Supreme Court, Westchester County |
| Docket Number: Indictment No. 23-71141-02 |
| Judge: Anne E. Minihan |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT: STATE OF NEW YORK
COUNTY OF WESTCHESTER

-----------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK

-against-

BRANDON BROIS

Defendant.

-----------------------------------------------------------------X

FILED

AND ENTERED

ON 9-13-2023

WESTCHESTER

COUNTY CLERK

FILED

SEP 1 5 2023

TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

DECISION & ORDER
Indictment No. 23-71141-02

MINIHAN, J.

Defendant, Brandon Brois, is charged by Westchester County Indictment Number 23-71141-02 with Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03[3]), Criminal Possession of a Weapon in the Third Degree (Penal Law § 265.02[1]), and Criminal Possession of a Weapon in the Fourth Degree (Penal Law § 265.01[4]) (9 counts). Defendant is charged together with his parents, codefendants Theodore Brois and Helene Brois, with Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03[2]), Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03[3]) (2 counts), Criminal Possession of a Weapon in the Third Degree (Penal Law § 265.02[2]), and Criminal Possession of a Weapon in the Third Degree (Penal Law § 265.02[7]) (2 counts).

Defendant has filed an omnibus motion consisting of a Notice of Motion, an Affirmation in Support, and a Memorandum of Law. In response, the People filed an Affirmation in Opposition and a Memorandum of Law. On August 15, 2023, defendant filed a Reply.

I.

## MOTION to DISMISS on CONSTITUTIONAL GROUNDS

Defendant moves to dismiss the indictment against him on the ground that the Second Amendment, as interpreted by *New York State Rifle & Pistol Association, Inc. v Bruen*, 142 S.Ct. 2111 (2022), gives him a constitutional right to possess firearms in his home without a license.

Defendant argues that New York's criminalization of firearms in one's home "infringes on the ancient right to keep and bear arms recognized in the Second Amendment to the United States Constitution" (*see* Helene Brois's Memorandum of Law, p 1)[1] and asserts that "the prosecution … cannot continue as it offends hundreds of years of well-settled law which permits, as here, possession of weapons in one's home for the purpose of self-protection" (*see* Helene Brois's Affirmation, p 2).

Defendant further argues that "*Bruen* instructs courts to under-take a comprehensive review of history to determine if Second Amendment restrictions are 'consistent with the Nation's historical tradition of firearm regulation'" (*see* Helene Brois's Memorandum of Law, p

---

[1] Defendant has fully adopted the arguments made in codefendant Helen Brois's motion papers with respect to this motion.

[* 1]

9, *citing Bruen*, 142 S.Ct. at 2130). Applying the *Bruen* instruction, defendant asks this Court to find New York's Penal Law statutes criminalizing unregistered firearms in one's home unconstitutional under the Second Amendment.[2]

Defendant acknowledges that his previous conviction for Attempted Criminal Possession of a Weapon in the Second Degree places him in a different position than his mother, codefendant Helene Brois, to make the arguments *supra*. However, defendant argues that "there has been no controlling, dispositive caselaw which stands for the proposition that a conviction for a prior possession of a weapon ... alone provides a sufficient historical analogue of prohibition as to strip any and all such offenders from Second Amendment protection" (*see* Defendant's Affirmation, p 2). As such, defendant maintains the Second Amendment constitutional right extends even to his possession of firearms despite his prior felony conviction.

In *Bruen*, the Supreme Court ruled that the Second Amendment protects the right to carry a weapon in public for self-defense, which may not be conditioned on "demonstrating to government officers some special need" to do so (*Bruen*, 142 S.Ct. at 2156). Thus, the Court held that "New York's proper-cause requirement violate[d] the Fourteenth Amendment [since] it prevent[ed] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms" (*Bruen*, 142 S.Ct. at 2156). Significantly, the Court did not disturb any other aspect of New York's firearm licensing scheme. The Supreme Court made clear that individuals with prior felony convictions or a history of mental illness, among other examples, may be denied the right to possess a gun. Justice Alito, concurring in *Bruen*, indicated that states may impose restrictions on the possession or carrying of guns and added that the *Bruen* holding "decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun [n]or does it decide anything about the kinds of weapons that people may possess" (*Bruen*, 142 S.Ct at 2157 [Alito, J., concurring]). The Supreme Court merely held that a law-abiding citizen applying for a concealed carry permit cannot be required to show "proper cause" – that is, an "atypical need for armed self-defense" (*Bruen*, 142 S.Ct. at 2138, fn 9). Thus, there is no constitutional impediment that restricts a state's ability to continue to require that a person obtain a license to purchase or possess a firearm or require that a person obtain a concealed carry permit in order to carry a handgun in public.

*Bruen* does not convey to citizens an unfettered right to possess weapons in their homes nor did it invalidate New York's laws criminalizing the unlicensed possession of firearms. The *Bruen* decision does not impact the constitutionality of the statutes criminalizing possession of a firearm because states maintain the right under the United States Constitution to require gun licenses for lawful possession and may instill certain requirements as part of the application process, such as undergoing a background check or passing a firearms safety course (*Bruen*, 142 S.Ct. at 2138, fn 9). Neither does the Second Amendment or *Bruen* confer an unqualified entitlement to possess a deadly weapon in one's home without restriction. "The right [secured by the Second Amendment is] not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose" (*Bruen*, 142 S.Ct. at 2128 [citations and internal quotation marks omitted]). In fact, the Supreme Court acknowledged New York's requirement that "[a] license applicant who wants to possess a firearm *at home* . . . must convince a licensing

---

[2] The New York Attorney General's Office, in a letter dated September 5, 2023, has indicated it will not intervene in this challenge.

officer . . . that, among other things, he is of good moral character, has no history of crime or mental illness, and that no good cause exists for the denial of the license" and did not find anything improper with those requirements (*Bruen*, 142 S.Ct. at 2122-23 [citations and internal quotation marks omitted]). Since *Bruen* was decided, no trial court has interpreted *Bruen* as prohibiting, on constitutional grounds, the criminal prosecution of a defendant for the unlicensed possession of a firearm under the Penal Law. In fact, in June of this year, the Appellate Division, Second Department, held that "[t]he ruling in *Bruen* ha[s] no impact on the constitutionality of New York State's criminal possession of a weapon statutes" (*People v Manners*, 217 AD3d 683, 686 [2023]). Despite defendant's contention to the contrary, *Bruen* allows states to maintain gun licensing schemes and to criminalize the unlicensed possession of handguns (*People v Caldwell*, 76 Misc 3d 997, 1003 [Sup Ct, Queens County 2022]; *People v Brundige*, 78 Misc 3d 616, 623 [Sup Ct, Erie County 2023]; *Frey v Bruen*, 2022 WL 3996713, *3 [SDNY 2022]).

Moreover, defendant lacks standing to challenge the application of New York's firearm licensing laws to him since he has not shown that he actually applied for, and was denied, a pistol license in New York (*see People v Williams*, 76 Misc 3d 925, 929 [Sup Ct, Kings County 2022]). Because defendant failed to seek a license and did not submit to the licensing process, he does not have standing to bring any challenge to the licensing scheme (*see United States v Decastro*, 682 F 3d 160, 164 [2d Cir 2012]; *see People v Rodriguez*, 76 Misc 3d 494, 496 [Sup Ct, New York County 2022]). In any event, defendant is not actually challenging New York's former licensing scheme; rather, defendant challenges the statutes criminalizing unlicensed possession, arguing that the right to bear arms confers an absolute entitlement to possess firearms in one's home. However, *Bruen* did not hold that the State is powerless to criminalize the unlicensed possession of firearms. Like other constitutionally protected rights, the right to bear arms is "subject to certain reasonable, well-defined restrictions," including licensing requirements (*Bruen*, 142 S.Ct. at 2156). Regardless, defendant's prior felony conviction for Attempted Criminal Possession of a Weapon in the Second Degree would have barred him from obtaining a pistol license in New York in any event (Penal Law § 400.00[1][c]).

Based on the foregoing, the Criminal Possession of a Weapon statutes as challenged are Constitutional and defendant's motion to dismiss the indictment is denied.

II.

## MOTION to INSPECT, DISMISS, and/or REDUCE
## CPL ARTICLE 190

Defendant moves pursuant to CPL 210.20 to dismiss the indictment, or reduce the counts charged against him, on the grounds that the evidence before the Grand Jury was legally insufficient and the Grand Jury proceeding was defective within the meaning of CPL 210.35. On consent of the People, the Court has reviewed the minutes of the proceedings before the Grand Jury.

The Court denies defendant's motion to dismiss or reduce the counts in the indictment for legally insufficient evidence because a review of the minutes reveals that the evidence presented, if accepted as true, would be legally sufficient to establish every element of the offenses charged, including that defendant constructively possessed the firearms charged in Counts 20 through 34

3

[* 3]

and possessed the firearms in Counts 20 through 25 in concert with his codefendant parents, Theodore and Helene Brois (*see* CPL 210.30[2]).

Pursuant to CPL 190.65(1), an indictment must be supported by legally sufficient evidence which establishes that the defendant committed the offenses charged. "Courts assessing the sufficiency of the evidence before a grand jury must evaluate whether the evidence, viewed most favorably to the People, if unexplained and uncontradicted--and deferring all questions as to the weight or quality of the evidence--would warrant conviction" (*People v Mills*, 1 NY3d 269, 274-275 [2002]). Legally sufficient evidence means competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof (CPL 70.10[1]; *see People v Flowers*, 138 AD3d 1138, 1139 [2d Dept 2016]). "In the context of a Grand Jury proceeding, legal sufficiency means prima facie proof of the crimes charged, not proof beyond a reasonable doubt" (*People v Jessup*, 90 AD3d 782, 783 [2d Dept 2011]).

Here, defendant is charged with possessing firearms that were found in his bedroom and in the basement, areas of the home he used and accessed. "To support a charge that a defendant was in constructive possession of tangible property, the People must show that the defendant exercised dominion or control over the property by a sufficient level of control over the area in which the contraband is found" (*People v Williams*, 170 AD3d 1046, 1047 [2d Dept 2019]). Indeed, there was testimony by defendant's mother, codefendant Helene Brois, that defendant's bicycles, ATVs, and snowmobiles were located in the basement.[3] Moreover, Helene Brois told the grand jurors that defendant played video games in the basement and would sometimes fall asleep there. Based on the foregoing, the grand jurors could reasonably infer that defendant exercised dominion and control over the basement in which the firearms were found, and thus, that he constructively possessed them (*see People v Williams*, 170 AD3d at 1047-1048).

It was also reasonable for the grand jurors to conclude that codefendants Theodore and Helene Brois had access to the basement and to those same firearms and thus, the three defendants jointly constructively possessed those firearms (*see People v Williams*, 170 AD3d at 1048). "The reviewing court's inquiry is limited to whether the facts, if proven, and the inferences that logically flow from those facts supply proof of every element of the charged crimes, and whether the Grand Jury could rationally have drawn the guilty inference. That other, innocent inferences could possibly be drawn from those facts is irrelevant to the sufficiency inquiry as long as the Grand Jury could rationally have drawn the guilty inference" (*People v Bello*, 92 NY2d 523, 526 [1998]). Here, the evidence presented, if accepted as true, is legally sufficient to establish every element of the offenses charged (CPL 210.30[2]).

With respect to defendant's claim that the Grand Jury proceeding was defective within the meaning of CPL 210.35, a review of the minutes reveals that a quorum of the grand jurors was present during the presentation of evidence and that the Assistant District Attorneys properly and clearly instructed the Grand Jury on the law, including on the theories of constructive possession and accessorial liability, and only permitted those grand jurors who heard all the evidence to vote the matter (*see People v Collier*, 72 NY2d 298 [1988]; *People v Calbud*, 49

---

[3] It is necessary for the Court to discuss specific testimony from the Grand Jury proceedings in deciding the instant motion (*see* CPL 190.25[4]).

4

NY2d 389 [1980]; *People v Valles*, 62 NY2d 36 [1984]; *People v Burch*, 108 AD3d 679 [2d Dept 2013]).

To the extent that defendant's motion seeks disclosure of portions of the Grand Jury minutes beyond the disclosure directed by CPL Article 245, such as the prosecutors' instructions and/or colloquies, the Court denies that branch of the motion.

III.

## MOTION to SUPPRESS PHYSICAL EVIDENCE and MOTION to CONTROVERT the SEARCH WARRANT

The Court orders a *Mapp* hearing prior to trial to determine the propriety of any search resulting in the seizure of property from defendant[4] (*see Mapp v Ohio*, 367 US 643 [1961]). The hearing will also address whether any evidence was obtained in violation of defendant's Fourth Amendment rights (*see Dunaway v New York*, 442 US 200 [1979]).

In his motion, defendant fully adopts the legal arguments set forth by defense counsel for codefendant Theodore Brois. As such, defendant moves this Court to controvert the search warrant for his home located at 3 Tallwoods Road in the Town of North Castle, Westchester County, New York and to suppress any physical evidence obtained as a result, alleging that the warrant was issued without probable cause and based on stale information, information consistent with innocent conduct, and on the incorrect police opinion that the gun parts ordered by codefendant Theodore Brois could only be used to make an illegal assault weapon. Defendant also argues that the warrant application is subject to judicially enhanced scrutiny because the search invaded conduct protected by the Second Amendment. Alternatively, defendant moves for a *Franks* hearing. Defendant additionally moves to suppress any evidence recovered from his cellular telephone as "fruit of the poisonous tree."

The results of a search conducted pursuant to a facially sufficient search warrant are not subject to a suppression hearing (*People v Arnau*, 58 NY2d 27 [1982]). The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Article I § 12 of the New York State Constitution contains identical language. "A search warrant must be supported by evidence establishing probable cause to believe that an offense has been or is being committed, or that evidence of criminality may be found in a certain place" (*People v Londono*, 148 AD2d 753 [2d Dept 1989]). Consistent with the constitutional provisions, CPL 690.45(4) requires that when a search warrant authorizes the seizure of property, the warrant must include "[a] description of the property which is the subject of the search." "To meet the particularity requirement, the warrant must be specific enough to leave no discretion to the police" (*see People v Cahill*, 2 NY3d 14, 41 [2003]). This Court recognizes the "strong judicial preferences for search warrants" (*People v Leggio*, 84 AD3d 1116, 1117 [2d Dept 2011]). Upon review of the four corners of the search warrant affidavit, the warrant was adequately supported by probable cause, and sufficiently particular as to the place to be searched and the things to be seized.

---

[4] Defendant, however, lacks standing to contest the seizure of anything from the persons of his codefendants, Theodore Brois and Helene Brois.

5

Defendant's argument that the alleged criminality here relates to an otherwise protected constitutional right is inaccurate. The details provided in the search warrant affidavit established probable cause to believe that codefendant Theodore Brois unlawfully possessed firearms, assault weapons, machine guns, and component gun parts to make or modify firearms into assault weapons in his home. The Second Amendment affords citizens the right to own and bear only those firearms that they lawfully possess. Here, according to the search warrant affidavit, codefendant Theodore Brois did not have a New York State pistol permit, or any weapons registered as assault weapons in the database maintained by the New York State Police (*see* Affidavit, ¶ 17). As such, his alleged possession of the firearms sought to be seized was not lawful.

Defendant maintains that codefendant Theodore Brois legally purchased items via Brownells.com, as set forth in the search warrant affidavit, and therefore had a lawful right to possess them (*see* Defendant's Memorandum of Law, p 19). The search warrant application relied on the affidavit of Town of North Castle Police Department Detective Conlan whose experience includes investigating the possession of firearms and familiarity with items used along with firearms and the ways in which people that unlawfully possess firearms conceal, store, and use their unlawful firearms and associated items (*see* Affidavit, ¶ 4, 5, 20). Based upon his experience and training in firearms, Detective Conlan indicated that the legally purchased gun parts on Brownells.com could be used to create illegal firearms (*see* Affidavit, ¶ 8, 13, 14, 15). Detective Conlan provided details about some of the specific parts ordered and how they could be used to construct an illegal assault weapon (*see* Affidavit, ¶ 14). Defendant argues that Detective Conlan materially misrepresented the law and facts when he stated, "[T]here is no other reason to purchase any of these items other than to construct an assault weapon" (*see* Affidavit, ¶ 15) and "I am further advised by Sergeant Harrison that neither he nor Detective Holzman are aware of an alternate use of the … folding stock adapters, other than to alter a semi-automatic rifle into an '[a]ssault [w]eapon'" (*see* Affidavit, ¶ 16). Detective Conlan provided this information based upon his own experience and training in firearms, the description from the Brownells.com website, as well as the firearm experience of two of the officers at the Westchester County Department of Public Safety's Forensic Investigations Unit, the commanding officer/laboratory director and senior firearms examiner who has examined and tested thousands of firearms, including semi-automatic rifles and assault weapons, in the course of over 20 years. The officers' background is relevant because "experience and training may allow a law enforcement officer to discern probable cause from facts and circumstances where a layman might not" (*US v Gaskin*, 364 F3d 438, 457 [2nd Cir 2004]). Indeed, the intrinsic nature of the parts ordered provided probable cause to believe they were associated with criminal activity since the parts, on their own, would serve no practical purpose. "Defendant's accumulation of firearm parts supported the inference that he intended to construct a firearm, which, in turn, supported probable cause to believe that he possessed a firearm" (*Connecticut v Holley*, 324 Conn 344, 353-354 [2016]). Defendant has failed to demonstrate that the warrant was based upon an affidavit containing false statements made knowingly or intentionally, or with reckless disregard for the truth (*People v McGeachy*, 74 AD3d 989 [2d Dept 2010]) and defendant has failed to make a substantial preliminary showing of cause for a *Franks-Alfinito* hearing (*Franks v Delaware*, 438 US 154 [1978]; *People v Alfinito*, 16 NY2d 181 [1965]; *People v Novick*, 293 AD2d 692 [2d Dept 2002]).

6

[* 6]

Defendant argues that the evidence supplied in the affidavit merely speculates that a crime "could be committed" and that there is no evidence that codefendant Theodore Brois watched any of the videos or instruction guides that the detective references (*see* Theodore Brois's Memorandum of Law, p 14-15). The affidavit, however, provided probable cause to believe that a crime had been or was being committed in the home. For one, the affidavit contained a listing of gun parts and other items purchased on Brownells.com in the name of codefendant Theodore Brois and addressed to him (*see* Affidavit, ¶ 11) and it contained a description of how those parts could be used to make illegal assault weapons (*see* Affidavit, ¶ 8, 13-16). Second, the affidavit provided evidence regarding defendant's criminal past, including a conviction for Attempted Criminal Possession of a Weapon in the Second Degree in March of 2019 in New York County (*see* Affidavit, ¶ 18-19). Defendant argues that details of his criminal past was "only included [in the application] to scare and prejudice the issuing magistrate" (*see* Theodore Brois's Memorandum of Law, p 12). However, according to the affidavit, 3 Tallwoods Road was the address associated with five incidents pertaining to defendant, including an arrest for Driving While Intoxicated in North Castle in February 2017 in which several firearms, weapons, and ammunition were located in his vehicle at the time and a 2019 arrest, and subsequent conviction, in Walton, New York for Criminal Possession of a Weapon in the Fourth Degree and Criminal Possession of a Controlled Substance in the Seventh Degree (*see* Affidavit, ¶ 19). In that case, defendant possessed "ghost" guns, Glock style pistols constructed from different weapons or custom built with no identifying serial numbers, in a vehicle registered to his mother, and co-defendant here, Helene Brois (*see* Affidavit, ¶ 19). Defendant's history and convictions for illegally possessing firearms further links the 3 Tallwoods Road address to illegal firearms.

Moreover, one of the parts allegedly purchased by codefendant Theodore Brois was one in which was returned because his "son never used the item" (*see* Affidavit, ¶ 18). Notably, because of his prior felony conviction for Attempted Criminal Possession of a Weapon in the Second Degree, defendant was not permitted at the time to ship, transport, receive, or possess firearms (18 USC § 922[g]; *see* Affidavit, ¶ 18) nor would he be permitted to obtain a pistol license in New York (Penal Law § 400.00[1][c]). The inclusion of defendant's arrests and convictions was relevant in establishing probable cause to search 3 Tallwoods Road for illegal weapons. Defendant's illegal possession of firearms, shotguns, ghost guns, and ammunition between 2017 and 2019, while living at 3 Tallwoods Road, in conjunction with codefendant Theodore Brois's online purchasing of gun parts usable to make semi-automatic rifles and converting them into assault weapons through August 2021, establishes probable cause between the Brois's possession of illegal firearms and assault weapons and the 3 Tallwoods Road address.

Defendant further argues that the facts adduced in the search warrant affidavit supporting the probable cause for the issuance of the warrant were stale since five months had elapsed between the date of the last shipment from Brownells.com and the date of the warrant. "The search warrant application must provide the court with sufficient information to support a reasonable belief that evidence of illegal activity will be present at the specific time and place of the search" (*People v Williams*, 249 AD2d 343 [1998]). The question of staleness is not resolved by merely counting the number of days between the events giving rise to the information and the issuance of the warrant, but the information may be acted upon when the facts existing in the past, which were sufficient to give rise to probable cause, continue to exist at the time the

7

application for a search warrant is made (*People v Clarke*, 173 AD2d 550 [2d Dept 1991]). This largely depends on the nature of the property to be seized (*People v Walker*, 285 AD2d 660 [3d Dept 2001]). Based on Detective Conlan's review of the invoices from Brownells.com, the online transactions spanned over a two-year period, evincing a continuous activity of a person or persons at the 3 Tallwoods Road home purchasing various gun components and parts. Moreover, the nature of the gun parts, used to construct homemade firearms and modify semi-automatic rifles into prohibited assault weapons, further strengthens the link between 3 Tallwoods Road and the presence of illegal firearms and assault weapons there. "Firearms are durable goods and might well be expected to remain in a criminal's possession for a long period of time" (*US v Pritchett*, 40 Fed Appx 901, 906 [6th Cir 2002]). They are not readily disposed of by way of sale or ingestion. Firearms can be collected and stored and are likely to remain inside a residence for a long period of time. As such, given the nature of the evidence sought, it was reasonable for the issuing judge to believe that firearms would be found in the home at the time of the application. Therefore, the information relied upon by the judge was not stale to provide probable cause for issuance of the search warrant. This belief was confirmed, ultimately, when numerous firearms and assault weapons were recovered from 3 Tallwoods Road during the execution of the search warrant.

Finally, whether the hundreds of pages of invoices were attached to the affidavit when it was signed by the issuing judge is immaterial because the affidavit listed specific items from those invoices, the date, and to whom and to what address they were shipped. Defendant argues that some items were shipped to a federal firearms licensee on behalf of codefendant Theodore Brois and thus, there is no link to the 3 Tallwoods Road address. However, over twenty of the listed items were in fact shipped to defendant's home and addressed to his father, codefendant Theodore Brois.

The Court has also reviewed the Search Warrant Order and finds it to be proper in all respects. For the above reasons, the Court denies defendant's motion to controvert the search warrant and to suppress the evidence seized during the search.

Based on the foregoing, defendant's argument that evidence extracted from his cellular telephone must be suppressed as "fruit of the poisonous tree" fails. In any event, defendant's cellular telephone was seized pursuant to a separate warrant, authorizing its seizure from the Westchester County Jail. Upon review of the four corners of the search warrant affidavit for defendant's cellular telephone, the warrant was adequately supported by probable cause, but not sufficiently particular as to the areas to be searched and the items to be seized. "To be compliant with the Fourth Amendment, the warrant must specify the particular items of evidence to be searched for and seized from the phone and be strictly limited to the time period ... for which probable cause had been properly established" (*Burns v US*, 235 A3d 758, 773 [DC, 2020]). The warrant here failed to conform to these requirements and "authorized the review of literally all of the data on [the] phone[]" (*Burns v US*, 235 A3d at 774) "without any guidelines, parameters, or constraints on the type of items to be viewed and seized" (*People v Melamed*, 178 AD3d 1079, 1081 [2d Dept 2019]). Moreover, the warrant allowed an examination without a timeframe limitation or date restriction, virtually allowing a temporally unlimited search (*see People v Perez*, 72 Misc 3d 310 [Sup Ct, Kings County, 2021][finding the search warrant for a cell phone overbroad where there was no connection between the phone and the alleged crime and when it

8

[* 8]

allowed for a temporally unlimited search of seemingly every component of the phone]). As such, the affidavit and subsequent warrant were fatally overbroad and lacked particularity. Federal courts have held that when the property to be searched is computer files, such as a cell phone, "the particularity requirement assumes even greater importance" since "[t]he potential for privacy violations occasioned by an unbridled, exploratory search of [such files] is enormous" (*US v Galpin*, 720 F3d 436, 446-447 [2d Cir 2013]; *see US v Zemlyansky*, 945 FSupp2d 438 [SDNY 2013] [lack of temporal limitation in the warrant supported the finding that the warrant functioned as a general warrant]). Because the warrant here authorized the examination of defendant's cell phone without any specificity or date restriction, the Court finds the warrant overbroad and insufficiently particularized and controverts the warrant. As such, all evidence seized therefrom is suppressed.

### IV.
### MOTION to SUPPRESS NOTICED STATEMENT

The People, pursuant to CPL 710.30(1)(a), noticed an oral statement allegedly made by defendant during the booking process at the North Castle Police Department on January 25, 2022 at approximately 6:44 P.M. The People did not provide the sum and substance of that statement in their notice, but rather directed defendant to the "booking video sent to defense counsel via the [Discovery] Portal on March 23, 2023." Defendant moves to suppress this statement as involuntary, the product of an unlawful arrest, made without being adequately apprised of *Miranda* warnings, and in violation of his right to counsel.

Defendant's motion to suppress is granted to the extent that a pre-trial *Huntley* hearing shall be held, on consent of the People, to determine whether the alleged statement was involuntarily made within the meaning of CPL 60.45 (*see* CPL 710.20(3); CPL 710.60[3][b]; *People v Weaver*, 49 NY2d 1012 [1980]). The hearing will also address whether the alleged statement was obtained in violation of defendant's Fourth Amendment rights (*see Dunaway v New York*, 442 US 200 [1979]), or his Sixth Amendment right to counsel.

### V. & VI.
### MOTION for *SANDOVAL* and *VENTIMIGLIA* HEARINGS

Defendant has moved for a pre-trial hearing to permit the trial court to determine the extent, if at all, to which the People may inquire into defendant's prior criminal convictions or prior uncharged criminal, vicious, or immoral conduct. On the People's consent, the court orders a pre-trial *Sandoval* hearing (*see People v Sandoval*, 34 NY2d 371[1974]). At said hearing, the People shall notify defendant, in compliance with CPL Article 245, of all specific instances of his criminal, prior uncharged criminal, vicious, or immoral conduct of which they have knowledge and which they intend to use in an attempt to impeach defendant's credibility if he elects to testify at trial, and, in any event, not less than 15 days prior to the first scheduled trial date. Defendant shall bear the burden of identifying any instances of his prior misconduct that he submits the People should not be permitted to use to impeach his credibility. Defendant shall be required to identify the basis of his belief that each event or incident may be unduly prejudicial to his ability to testify as a witness on his own behalf (*see People v Matthews*, 68 NY2d 118 [1986]; *People v Malphurs*, 111 AD2d 266 [2d Dept 1985]).

9

[* 9]

If the People determine that they will seek to introduce evidence at trial of any prior uncharged misconduct and criminal acts of defendant, including acts sought to be used in their case in chief, they shall so notify the court and defense counsel, in compliance with CPL Article 245, and, in any event, not less than 15 days prior to the first scheduled trial date, and a *Ventimiglia/Molineux* hearing (*see People v Ventimiglia*, 52 NY2d 350 [1981]; *People v Molineux*, 168 NY 264 [1901]) shall be held immediately prior to trial to determine whether or not any evidence of uncharged crimes may be so used by the People. The People are urged to make an appropriate decision in this regard sufficiently in advance of trial to allow any *Ventimiglia/Molineux* hearing to be consolidated and held with the other hearings herein.

VII.

## *BRADY* MATERIAL

The People acknowledge their continuing duty to disclose exculpatory material (*Brady v Maryland*, 373 US 83 [1963]; *see Giglio v United States*, 405 US 150 [1971]). The People also acknowledge that they have or will comply with their obligations under CPL 245.20(1) (k), (l), and (p). If the People are or become aware of any such material which is arguably subject to disclosure under *Brady* and its progeny and Criminal Procedure Law Article 245 which they are unwilling to consent to disclose, they are directed to bring it to the immediate attention of the Court and to submit it for the Court's in camera inspection and determination as to whether it constitutes *Brady* material discoverable by defendant.

The Court has served a *Brady* Order on the People, dated May 23, 2023, which details the time period their disclosure must be made in accordance with the standards set forth in the United States and New York State Constitutions and CPL Article 245.

VIII.

## LEAVE TO MAKE ADDITIONAL MOTIONS

Defendant's motion for leave to make additional motions is denied. Defendant must demonstrate good cause for any further pre-trial motion for omnibus relief, in accordance with CPL 255.20(3).

The foregoing constitutes the Decision and Order of this Court.

Dated:    White Plains, New York
          September *12*, 2023

                                          _____
                                          Honorable Anne E. Minihan
                                          Justice of the Supreme Court

10

[* 10]

To:
Hon. Miriam E. Rocah
District Attorney, Westchester County
111 Dr. Martin Luther King, Jr., Blvd.
White Plains, NY 10601
Attn: ADA James Bavero
     ADA Courtney Johnson
JBavero@westchesterda.net
CJohnson@westchesterda.net


Stanley L. Cohen, Esq.
79 Blackberry Lake Road
Jeffersonville, NY 12748
StanleyCohenLaw@gmail.com
*Attorney for defendant, Brandon Brois*

[* 11]